Marcus R. Mumford (admitted *pro hac vice*)
405 South Main, Suite 850
Salt Lake City, UT 84111
(801) 428-2000
mrm@mumfordpc.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br>v.<br>AMMON BUNDY, *et al*,<br>    *Defendants*. | Case No. 3:17-mc-00348-JCC<br><br>RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE [DOC. 6], PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE [DOC. 2069] AND MOTION FOR FINAL ADDITIONAL ENLARGEMENT OF TIME<br><br>Judge John C. Coughenour |

On November 3, 2017, the Court issued a *sua sponte* order to show cause based upon my failure to respond to Doc. 2069, and specifically why my failure should not be treated as an admission that the relief outlined in that order should be granted and that the January 8, 2017 evidentiary hearing is no longer necessary. The November 3 order gave me until today, November 10, 2017 to file my response. This filing is timely.

In the response, I have included 1) a direct answer for my failure to file in response to Doc. 2069, 2) a provisional response to Doc. 2069, and 3) a motion for one final enlargement of time to file a finalized, rather than provisional, response to Doc. 2069.

## I.    DIRECT ANSWER IN RESPONSE TO DOC. 6

In early August 2017, I filed for and was granted an extension of time to respond to Doc. 2069, on the primary basis of needed more time to obtain transcripts necessary to investigate, research and compose my response. *See* 3:16-cr-00051, Doc. 2192 (August 8, 2017). As I worked on making my response, I was in repeat communication with opposing counsel as I

1

realized more time was necessary, and on October 31, 2017 I requested and obtained leave of the Court to file my response by that day, October 31, 2017. That date is significant because opposing counsel and I had reached an agreement for the extension of time up to that date and I had agreed to file and request a formal extension from the Court. In that motion (Doc. 4) (which I incorporate fully here as additional support for this response and the motion below), subsequently granted on the same day (Doc. 5), I rather thoroughly outlined the basis for the delay, the needed extra-time and provided an explanation and detail of work done to-date, including more than 100 hours of work, reviewing more than 500 pages of transcripts, and having to respond to an unexplained laundry list of dozens of record citations in the original OTSC that has literally become an overwhelming task in terms of time and effort. As of October 31, 2017, I was still not finished, and though I reasonable thought at the time I was very close to being finished, I made mistake in my motion in asking only for an extension of time through the date of that filing. I was attempting to be conservative and circumspect in my request, but candidly, I simply should have asked for more time and mistakenly did not. I apologize to the Court and opposing counsel for the subsequent delay of 10 days. If there were the only factors, I would have been in contact with the Court and with opposing counsel prior to now – but these were not the only factors contributing to this extra 10-day delay.

On October 31, 2017, not only was I diligently working on my response to the original OTSC (Doc. 2069), but late that day I learned that the United States had decided to re-try my client in, *United States of America v. Claud R. Koerber*, Case No. 2:17-cr-17 (District of Utah). This is a case that I have been defending intensively since back in 2009. It has included four different indictments, multiple appeals, a remand, a full criminal trial lasting eight weeks from August 2017 through October 2017, and recently included a hung jury and mistrial. I previously

mentioned this case in my last motion (Doc. 4) because in late August (after my initial request for extra time) I was required due to professional conviction and ethical demands, to represent Mr. Koerber at his trial from August through October, though I had not been on the case since the most recent indictment in January 2017, was not ready for trial, and the district court had failed to grant a continuance – all *pro bono*. As I've previously described this case is significant, complex, intensive as far as time commitment, and my involvement in that trial under the circumstances caused tremendous interference with my ability to work on the filing here in response to Doc. 2069. There was also a cascading effect of my involvement in that case, on my small practice, which caused me to delay and postpone work on other client matters – and this response. Nevertheless, as soon as I was done with that case, I redoubled my efforts here on this project, but on October 31, 2017 not only did we learn that the government intended to re-try Mr. Koerber in this eight year old case, but soon thereafter the assigned judge recused. The news of the coming re-trial required a tremendous amount of immediate attention, identifying urgent issues related to records, witnesses, anticipated filings, communication with the client, coordination with prior experts, etc. In addition, the recusal of Judge Robert Shelby – not fully explained – also included the same judge's recusal in two other significant and complex cases of mine: *Garth O. Green Enterprises, Inc., et al., v. Randall Harward*, et al, 2:15-cv-556 (District of Utah); and *Islet Holdings et al v. Islet Sciences et al*, 2:12-cv-799 (District of Utah). This new development, caused a chain reaction of unexpected legal consequences, right at the same time my response in this matter was due – and it has been overwhelming. To help this Court understand, in the *USA v. Koerber* case (which is related to one of the OTSC issues here), the Magistrate Judge appears to have relied upon the OTSC here and the allegations therein, when he deprived me of CJA approval, denied my ability to work with co-counsel on the case, and made

other decisions increasing the burden of *USA v. Koerber* on my time and mental ability, in terms of how much of each a response like this obviously requires. Further, the unexpected recusal of Judge Shelby from *USA v. Koerber* and the other two cases named above – immediately created ethical responsibilities on my part, regarding prioritizing my client's needs, including one urgent and extensive filing immediately required in *Green Enterprises, Inc., v. Harward*. Finally, at the same time, a four-day evidentiary hearing in State of Utah *Attorney General v. Jason Hawkins*, 17-1903083 (3rd District Court – Salt Lake District, State of Utah) had run over from October 24 to October 31, 2017. The case involves allegations of a complex communications fraud scheme and pattern of unlawful conduct involving a real estate brokerage's efforts to close residential short sale transactions.

The unexpected and urgent nature of all three of these matters, was not something I anticipated in early August when I asked for the original extension then, nor could I have anticipated the exceptionally overwhelming circumstances from October 31, 2017, through to now. Nevertheless, I have continued to work on completing my response to the original OTSC in this matter, with every moment I could find, prioritizing this project above all other non-emergency demands on my time and efforts. All this being said, the Response is still not finished. I am attaching it to this filing as a "provisional" filing, so that the court can see that I have diligently been working, on this extensive answer. Frankly, it would only take a few hours to draft the OTSC as it exists, and that was likely following only a few hours quickly creating the laundry list, undescribed and unexplained citations in the OTSC. On the other hand, I am now at least 150 hours into the Response, with fully explained legal objections to the form and merit of the OTSC and related due process implications, as well as a thorough, citation by citation response to each possible allegation. As the Court can see by looking at the provisional filing, I

am taking this matter very seriously, I disagree with the allegations based upon the thorough and exhaustive citation I've made to the transcripts I have available, and even leaving aside all the legal deficiencies of the OTSC, I have a meritorious and thorough response to each issue raised. Unfortunately, the way this issue has been crafted, I am forced to cover the provided citations as one looking for the proverbial needle in a haystack lest I miss one citation, or overlook one possible allegation (since none are described or explained specifically in the OTSC), my professional reputation and ability could suffer greatly. In sum, I have endeavored diligently to present the response ordered, I have a meritorious response to each allegation, my shortcomings on meeting the time deadline have not been for lack of diligence, instead I have simply made the mistake of underestimating how long it would take to finish the response, and have previously requested too little time to finish.  Finally, as a legal matter, the 10 days past the approved deadline is significant and I have attempted to provide a full explanation of what is required to meet the excusable neglect standard in Rule 6.  However, more than Rule 6 is at issue, and granting the relief requested in the original OTSC, based essentially on a "default" for a 10 day overrun, would contravene the other more fundamental issues of fairness and propriety at issue here.  While I do not dispute that this Court generally has authority to issue sanctions and ensure compliance and adherence to its rules and standards, *see, e.g., Ex parte Burr*, 22 U.S. (9 Wheat.) 529 (1824), any consideration of disbarment or revocation of the ability to appear before the court is among the highest possible sanctions, and is governed by exceptionally high standards, including the establishment of both "factual and legal prerequisites" before any such exercise of this power is legitimate. *Zambrano v. City of Tustin,* 885 F.2d 1473, 1478 (9th Cir. 1989); *In re L.A. Cnty. Pioneer Soc'y,* 217 F.2d 190, 193–94 (9th Cir. 1954) (collecting cases). The first consideration in determining whether to impose the sanctions contemplated by the OSC is my

5

due process rights to fair and adequate notice – and my corresponding right to be heard *after* being afforded that notice. *Cole v. U.S. Dist. Court*, 366 F.3d 813, 821 (9th Cir. 2004) ("[R]evocation of *pro hac vice* status is a form of sanction that cannot be imposed without notice and an opportunity to be heard."). The second consideration derives from both the Sixth Amendment and Fifth Amendment due process rights of my client, a criminal defendant.[1] *See United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976) ("In this connection, of course, the Sixth Amendment is indisputably relevant, for it helps define the limits of judicial discretion."); *Collins*, 920 F.2d at 627 (10th Cir. 1990) (noting that in a criminal case, considerations of attorney sanctions must balance the "social need for ethical practice" of law, and before imposing disbarment or disqualification, an express finding that this need, under the circumstances then present, "outweighs the party's right to counsel of his choice"). The OTSC at issue here is the basis not only for my required Response, but it insufficient form – both legally and factually – is the primary cause of the broad, expansive, and extensive effort it is taking to provide a full response. For this reason, due process interests and the legal standards referenced above, should take priority, and given the relative insignificant of the 10-day overrun, under the circumstances described above, there is not cause to enter judgement on timeliness grounds.

For all the above specified reasons, and those I have incorporated, my admission *pro hac vice* should not be revoked, and my ability to practice law in Oregon should not be barred, for the 10-day delay of my filing past the approved deadline, nor for the false allegations in the original OTSC. Recognizing that the Court has already ruled I will not be granted extensions of time for

---

[1] "The damage in this case includes the petitioners' loss of a lead counsel... And if [the attorney's] knowledge could be gained by another counsel, another attorney still may not gain the same quality of attorney-client relationship and rapport …Once a new attorney is brought in, the effect of the order is irreversible."). *Cole*, 366 F.3d at 813.

my future Reply brief, and looking at the schedule as it is currently set, even with the 10-day delay from October 31 to today, there is still several weeks between the final filings here, and the hearing scheduled – and therefore there is no appreciable prejudice to either party, nor does there appear to by any significant burden on the scheduled proceeding. Therefore, the current hearing should remain, on schedule.

## II. My Provisional Response to the Original OTSC

I have included with this filing, a provisional version of my Response to the original OTSC (Doc. 2069). Below I am requesting that I have through this weekend, as one final extension of time, to complete the filing and bring it into a more complete, finished and professional form. However, should the Court deny that motion, I have included the provisional response here, so that should the Court deny my motion below, it would simply accept my provisional response as my Response to Doc. 2069 instead. The provisional response included with this filing is sufficiently complete to address the merits of each basis upon which the Court could inquire or rule on the OTSC, and it sufficiently raises the legal objections I am making. Nevertheless, it is not as thorough as I would like, it needs additional proof-reading and improved citations for ease of reference by the Court and the government, and there are additional arguments and explanations that I would like to provide.

## III. MOTION FOR FINAL EXTENTION TO RESPOND

In *United States v. Talao*, 222 F.3d 1133, 1138 (9th Cir. 2000), the Ninth Circuit pointed out that even a judicial reprimand is "likely to stigmatize [an attorney] among her colleagues and potentially could have a serious detrimental effect on her career," including putting her license at issue. In *Precision Specialty Metals, Inc. v. United States*, the court explained why: "[a] lawyer's reputation is one of his most important professional assets" and "a reprimand may have a more

serious adverse impact upon a lawyer than the imposition of a monetary sanction." 315 F.3d 1346, 1353 (Fed. Cir. 2003); *see also Williams v. United States (In re Williams)*, 156 F.3d 86, 90 (1st Cir. 1998) (stating that "a lawyer's professional reputation is his stock in trade, and blemishes may prove harmful in a myriad of ways"); *Walker v. City of Mesquite*, 129 F.3d 831, 832 (5th Cir. 1997) ("professional reputation is a lawyer's most important and valuable asset").

This is why other courts have recognized that an attorney must be given the meaningful opportunity to respond before his or her pro hac vice status can be revoked. *Cole v. U.S. Dist. Court For Dist. of Idaho*, 366 F.3d 813, 821–22 (9th Cir. 2004); *Kirkland v. Nat'l Mortg. Network, Inc.*, 884 F.2d 1367, 1372 (11th Cir. 1989) (vacating order revoking pro hac vice where attorney was not given meaningful opportunity to respond); *Johnson v. Trueblood*, 629 F.2d 302, 304 (3d Cir. 1980); *see also United States v. Collins*, 920 F.2d 619, 626 (10th Cir.1990) ("Attorneys admitted pro hac vice are held to the same professional responsibilities and ethical standards as regular counsel. Once admitted, pro hac vice counsel cannot be disqualified under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar."); *United States v. Ries*, 100 F.3d 1469, 1471 (9th Cir. 1996) ("Pro hac vice counsel … cannot be disqualified under standards and procedures any ... more stringent than those imposed upon [members of the local bar].'") (citation omitted). Accordingly, while I recognize that I am 10 days past the last approved deadline, I request that the Court provide me the remainder of this weekend, **until midnight November 12, 2017**, to finish amending, revising, and completing the provisional response I've included herewith. This is consistent with providing me with a full and fair opportunity to be heard, under the circumstances of this matter, and in context of the issues I've confronted. The extra few days will not cause prejudice to the government or the Court's schedule, and will result in a more

complete, clear and helpful form of the Response, and is allowable to enable a more thorough answer to the false allegations in the OTSC. *See e.g. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) ("[W]e conclude that the determination [of excusing a late filing deadline based upon neglect] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.")

    DATED: November 10, 2017

                                      */s/ Marcus R. Mumford*
                                      Marcus R. Mumford