Marcus R. Mumford (admitted *pro hac vice*)
405 South Main, Suite 850
Salt Lake City, UT 84111
(801) 428-2000
mrm@mumfordpc.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE MARCUS R. MUMFORD | Case No. 3:17-mc-00348-JCC |
| | WITNESS LIST AND PARTIAL PROFFER OF TESTIMONY |
| | Judge John C. Coughenour |

Pursuant to the Court's Order dated November 14, 2017, I submit this witness list and proffer. As the Court should be aware at this point, I believe the Court has grossly misconstrued its prior order regarding "briefing" to strike meritorious motions that I have filed, and done so without even giving me the opportunity to respond to those motions to strike. It seems like that should be part of this process, indeed the very rules that the Court's counsel cites in the motions to strike, local rules or otherwise, expressly contemplate that the opposing party will get the opportunity to respond before the Court rules on any motions. The fact that the Court seems intent on striking any motion under the guise of its prior ruling regarding "briefing" in response to the Order to Show Cause gives me even greater concern about the fairness of this proceeding, and I intend to seek further relief from the Court. The fact that I do not fully expound on that issue here should not be construed as any kind of a waiver, as this witness list and proffer is made with an express reservation of rights in that respect.

ANTICIPATED WITNESSES

| | |
|---|---|
| 1. | Amanda Mendenhall |
| 2. | Matthew Schindler |

| 3.  | Lisa Ludwig |
|-----|-------------|
| 4.  | Per Olson |
| 5.  | Robert Salisbury |
| 6.  | Tiffany Harris |
| 7.  | Lisa Maxfield |
| 8.  | J. Morgan Philpot |
| 9.  | Ammon Bundy |
| 10. | Ryan Bundy |
| 11. | Claud R. "Rick" Koerber |
| 12. | Courtney (last name currently unknown) |
| 13. | Court Reporter 1 |
| 14. | Court Reporter 2 |
| 15. | Court Deputy Bonnie Boyer |
| 16. | Judge Michael Mosman |
| 17. | Herbert E. "Bud" Scruggs |
| 18. | Tom Gurrister, MS-CCC |
| 19. | Maxine Bernstein |
| 20. | A representative from the United States Department of Justice, including potentially the prosecutors assigned to United States v. Mumford |
| 21. | Richard Van Wagoner |
| 22. | Samuel Alba |
| 23. | Marcus Mumford, Respondent |

PROFFER

1.      Amanda Mendenhall, Matthew Schindler, Lisa Ludwig, Per Olson, Robert Salisbury, Tiffany Harris, Lisa Maxfield, J. Morgan Philpot, and Courtney (Name Currently Unavailable)

Each of these individuals served as counsel for a defendant and was present throughout trial in the Bundy matter.[1] It is anticipated that each will testify consistent with their declarations, which are reattached here, where they provided one previously. It is anticipated that they will testify consistent with the attached proffer of Marcus Mumford, regarding other matters raised in the Order to Show Cause and the related evidentiary rulings and conduct of the Bundy trial, including the events of October 17 and 27, 2017, as raised in my response to this matter. In particular, it is anticipated that these individuals will explain how it is incorrect to conclude, as Your Honor, Judge Coughenour, appears to already have concluded based on an incomplete presentation of evidence, that I "interfered" with U.S. Marshals, and also to excuse those Marshals' failure to comply with prior court practice and orders.[2] As many of the attached declarations point out, the reports filed by the U.S. Marshals in support of the criminal charges brought against me and dismissed were false.[3] In is anticipated that they will testify and explain that I never assumed a "fighting stance," as the marshals have alleged.[4] And they will testify to the very real and substantive appearance of a vindictive prosecution in this matter, stemming

---

[1] In the case of the witness identified as Courtney, she served as a defense investigator. I plan to follow up with my investigation and more fully identify her as soon as possible. She has previously reached out to convey to me and my team her willingness to testify regarding what she observed in the courtroom throughout trial, especially regarding the inappropriate actions by the marshals against me and the other members of the defense team.

[2] *See* Amanda Mendenhall Decl. at ¶¶ 12-18; Per Olson Decl. at ¶ 5-7; Lisa Ludwig Decl. at ¶¶ 7-14; Robert Salisbury Decl. at ¶ 7; Matthew Schinlder Decl. at ¶¶ 15-22. See also the email I wrote Judge Mosman on October 28, 2016, attached as Exhibit A.

[3] See id.

[4] *See* Mendenhall Decl. ¶¶ 9-15; Koerber Decl. ¶ 8.

3

from among other things the events of October 17, 2017, during a joint defense meeting held in the courtroom. It is anticipated that they will testify, among other things, to the specific protocol and procedures regarding the removal of the in-custody defendants from the courtroom after each session that had developed over the course of at least the prior eight weeks. For example, defendant David Fry's attorney, Per Olson, explained:

> [T]he judge established a protocol for removing the in custody defendants from the courtroom at a recess. The judge would ask everyone else in the well of the court to remain seated while the in-custody defendants (the Bundys and Mr. Fry) were asked to stand up and walk to the side of the courtroom where the deputies would be standing and where there was a door leading to the holding area. The defendants would move to the side of the courtroom on their own, without having the deputies physically approach them where they sat at their tables. At the [October 27th] proceeding described above, the judge did not get to the point of asking everyone to remain seated while the in-custody defendants made their way out of the courtroom, as Mr. Mumford was taken to the floor before that could happen. My recollection is that the judge declared a recess as Mr. Mumford was being grabbed. Therefore, the claim that the deputies were trying to escort the defendants, including Ammon Bundy, from the courtroom before Mr. Mumford was grabbed, is inaccurate and not in keeping with how defendants were removed from the courtroom throughout the course of the trial.[5]

Similarly, Defendant Ken Mendenbach's attorney, Matthew Schindler, described how

> There was a standard procedure for in custody defendants to leave the room and it was always initiated by the judge. She was still engaged with Mr. Mumford discussing issues related to Ammon Bundy's release when the marshals moved towards him. The court had not yet directed the marshals to remove the defendants from the room so Mr. Mumford could not have interfered with any effort to remove the defendants.[6]

And defendant Jeff Banta's attorney, Robert Salisbury, disputed the marshals' account of events:

> Mr. Mumford did not in any way interfere with the efforts of the US Marshals to remove his client Mr. Ammon Bundy from the courtroom. At the time Mr. Mumford was grabbed by the US Marshals, they were not yet even trying to take Mr. Mumford's client back into the jail. In fact, the trial Judge (Hon. Anna Brown) had a procedure in which she would have all the defendants and counsel sit down in their seats first, then the US Marshals would step forward and take the

---

[5] Olson Decl. (Exhibit C) at ¶ 7.
[6] Schinlder Decl. (Exhibit F) at ¶ 21.

in-custody defendants out of the courtroom and into the courthouse jail. This process of taking the defendants back into the jail (which we had repeated over and over again during two months of trial) had not even started at the time Mr. Mumford was making his argument for release of his client Mr. Bundy.[7]

Your Honor failed in a prior ruling in US v. Mumford to take these matters into account. Mr. Schindler provided some additional context in his attached declaration, where he explained how Judge Brown is "well versed in the law," but can be "consistently rude and demeaning towards counsel of both sides in front of the jury," noting that "because the Court's language while yelling is generally polite, the transcript generally fails to capture the true nature" of how Judge Brown treats attorneys.

> The Court's demeanor tends to be particularly problematic when counsel is trying to make a record before the Court about why it might be wrong. Over the years, I have been involved in numerous arguments with this judge where I raised my voice. In every instance, it was in response to a judge whose demeanor towards me was inappropriate and unprofessional. I have stood at times despite this Court screaming at me to sit because I believed that the Court's treatment of me was prejudicing my client before the jury. It is my responsibility and constitutional role to stand up. Nothing about Mr. Mumford's attitude and demeanor diverged from the kind of attitude and demeanor I have displayed repeatedly before this same Court without consequence. From my perspective, Mr. Mumford was standing up for his client who was innocent. He was refusing to be bullied by the Court, which is exactly what every criminal defense attorney should do.[8]

Many of the issues raised in the OSC concern the correctness of Judge Brown's evidentiary rulings. In many of those instances, the law requires that a criminal defense attorney create a record at trial that demonstrates not only the error of a trial judge's rulings, but the prejudice to the defense – to overcome what appellate courts call the doctrine of "harmless error." *See, e.g., Neder v. United States*, 527 U.S. 1, 38 (1999). Taking those factors into account, it is important to understand that the Court cannot apply the typical "abuse of discretion"

---

[7] Salisbury Decl. (Exhibit E) at ¶ 7.
[8] Schindler Decl. (Exhibit F) at ¶ 10.

standard to the evidentiary issues presented in the OSC. And Judge Brown never held me in contempt or otherwise imposed any discipline.

Finally, it is anticipated that these individuals will explain our interactions in preparing a joint defense on behalf of our clients, and how that defense was presented in a manner consistent with the Constitution and applicable ethical standards to zealously defend our clients. I summarize here some of the informed conclusions of these individuals, dealing primarily with the events of October 27, 2016, at issue in OSC ¶¶ 1, 2, and 5, but also with the trial as a whole. Mr. Schindler wrote:

> Because of my involvement in the trial, I had an opportunity to work extensively with Mr. Mumford. In 23 years, I have never met a criminal defense attorney more committed to providing his client zealous advocacy in the face of seemingly impossible odds and an antagonistic federal judge. I know there were times where he did not sleep in an effort to prepare, consistent with the Court's impossible schedule. The effort he expended was unique in my experience.
> …
> Considered in total, it is my opinion as an expert in federal criminal practice and procedure that Mr. Mumford's conduct, although perhaps difficult or unpleasant for the Court, was within the bounds of appropriate advocacy in the circumstances of this case. In order to seek justice in a system that is weighted heavily in favor of the government and where the assumption is that everyone will be convicted, aggressive and zealous advocacy is required. Mr. Mumford's advocacy represented exactly that. There is nothing that I witnessed during the course of this litigation indicating that Marcus Mumford committed any unethical conduct …[9]

Mr. Salisbury wrote:

> Mr. Mumford's actions on October 27, 2016 were not in any way prejudicial to the administration of justice. Quite to the contrary, Mr. Mumford's actions were in the highest and best traditions of what criminal defense attorneys do on behalf of our clients.[10]

And Ms. Ludwig wrote:

9.  The Bundy trial was unique in many ways, but Marcus Mumford's role in it was

---

[9] Schindler Decl. (Exhibit F) ¶¶ 8-22.

[10] Salisbury Decl. (Exhibit E) ¶ 8.

even more unique: he came into it late, taking over for another lawyer, without CJA resources, and was expected by both Bundy brothers, and an entire political movement, to lead their defense case to victory. He was also looked to by the other defense teams for leadership in planning the trial strategy. He was living out of a suitcase and practicing in a new jurisdiction. Despite all of that, be earned the respect of the lawyers in this District and won the trial. During that trial, he made an excellent record in the event of an appeal, and argued many evidentiary issues successfully, causing Judge Brown to change a number of her rulings. My impression was that during the trial, they reached a point of mutual respect;

10. At several times during the trial, Mr. Mumford argued legal issues to the Court, becoming emphatic and even raising his voice. However, his conduct was always professional even when zealous, and as I mentioned above, it was often effective in reaching Judge Brown;

13. I have been a lawyer for over 21 years and have participated in at least a hundred trials and thousands of hearings. During all of that time I have observed many lawyers, many heated arguments, and plenty of high emotion in courtrooms. I have also interacted with many law enforcement officers and court staff;

14. I was surprised that Mr. Mumford had the presence of mind and the energy to address the issue of the detainer as soon as the jury was discharged. But I was shocked that law enforcement officers, especially U.S. Marshals, would attack a lawyer who was engaged only in strenuous argument.

15. Mr. Mumford, in my opinion, functioned professionally and effectively on behalf of his client throughout the trial. He appeared to compensate for small physical size and a debilitating speech impediment with a certain assertive style, but he was lawyerly at every turn. He was at times emotional about his case, but never physical. In short, clients are lucky to have an advocate like Marcus Mumford, and lawyers are fortunate to have him to learn from.[11]

2.    Ammon Bundy and Ryan Bundy

Ammon Bundy was my client during the Bundy trial, where the jury acquitted him on all charges. It is anticipated that Mr. Bundy will testify to the events at trial, including the events of October 27, 2017, when it has been alleged (and this Court appears to have erroneously already concluded without even holding an evidentiary hearing) that I somehow interfered with the marshals' efforts to take him into custody. Mr. Bundy will further testify regarding how his

---

[11] Ludwig Decl. (Exhibit D) ¶¶ 9-10, 13-15..

interests and rights implicated by this matter. Similarly, Ryan Bundy was seated at the same defense table as me and Mr. Ammon Bundy for the duration of the trial, including on October 27, 2017. It is anticipated that Mr. Ryan Bundy will testify regarding the events at trial, and the specific protocol and procedures regarding the removal of the in-custody defendants from the courtroom after each session that had developed over the course of at least the prior eight weeks, including the events of October 27, 2017, when it has been alleged that I somehow interfered with the marshals' efforts to take him and his brother, Ammon, into custody.

       3.       J. Morgan Philpot and Claud R. Rick Koerber.

It is anticipated that, in addition to the proffer above which included Mr. Philpot, that he will also testify to the events of October 27, 2017, and his interactions with the marshals following my arrest. It is anticipated that he will testify to his sponsorship of my admission pro hac vice and the false and misleading nature of allegations set forth in the Order To Show Cause. This includes the matters raised regarding the proffer of Mr. Koerber as a potential defense witness. It is anticipated that Mr. Koerber will testify regarding matters raised in the Order to Show cause, including matters set forth in his attached declaration and matters raised regarding the proffer of Mr. Koerber as a potential defense witness, as summarized in my proffer.

       4.       Court Reporters 1 and 2.

It is anticipated that these individuals will testify regarding audio recordings, if any, of trial proceedings during the Bundy matter, so that I may assess and present to the Court information contradicting the interpretation of proceedings that comes from the incomplete excerpted transcripts. It is anticipated that these individuals may be able to authenticate other matters rising from the unofficial rough transcripts as necessary, to avoid any prejudice that may result if I am unable to secure an official transcript by the time of the hearing.

5. Court Deputy Bonnie Boyer

It is anticipated that Ms. Boyer will testify and authenticate certain correspondence with the court regarding Mr. Koerber, and other matters raised in the OSC.

6. Judge Michael Mosman

It is anticipated that Mr. Mosman will testify to the efforts made to preserve and obtain evidence in this matter, as set forth in his correspondence with me. It is further anticipated that he will testify to the basis for his recusals, which he communicated in response to my correspondence with him regarding evidentiary matters, and then again after he issued the order to show cause. It is anticipated that he will testify as to what basis and authority he had for issuing the OSC, and what authority he had to appoint Mr. Weaver and other counsel for the District Court. It is anticipated that he will testify regarding what communications he had with Mr. Weaver after he was supposedly recused from this matter. Finally, my investigation has suggested that there may be communications between Mr. Mosman and the federal court in Utah that I understand may involves coordination between the courts as both have filed matters challenging my actions in the Bundy matter. As has been reported, that may also involve a complaint that the Department of Justice filed against me in August 2017, with all of the bars that I am admitted to, seeking to discipline me for the events related to the Bundy matters and others. Courts have strongly condemned coordinated efforts by governmental bodies to disqualify defense counsel. Finally, it is anticipated that Judge Mosman will explain why this Court has any authority to consider the OSC in the first place.

7. Herbert E. "Bud" Scruggs

Mr. Scruggs is a neighbor and mentor of mine. It is anticipated that he will provide a character reference and further provide the Court with some relevant background information. It

9

is anticipated that Mr. Scruggs will testify regarding what he has observed and how my communications are sometimes received and misinterpreted on account of my stuttering, especially in a public setting, and especially where they may not be what those in positions of authority wish to hear.

8. Tom Gurrister, MS-CCC

Mr. Gurrister is a speech and language pathologist, specializing in stuttering and speech therapy for individual who stutter. As explained further in the proffer below, I suffer a life-long speech impediment. It is anticipated that Mr. Gurrister will testify regarding that impediment, especially regarding his specialized knowledge of research in the field of communicative disorders documenting how listeners physically react in an adverse manner to people who stutter, and how they frequently misinterpret in a negative way the verbal and nonverbal communications made by people who stutter. This appears to be especially prevalent in authority figures who are inclined to disagree with what the stutterer is saying. In sum, I believe the Court, be it Judge Brown, Judge Mosman, or Your Honor, should be made to understand how its allegations regarding my "style" or "volume" or "conduct" have potentially misconstrued secondary behaviors associated with my speech impediment, and how I have learned to deal with that impediment in a trial setting, and that this information will inform and be helpful to the court in concluding that my conduct does not warrant court discipline or disbarment, and that the court should not impose any such sanction without considering how that decision, as the OSC itself, may run afoul of laws and regulations protecting individuals with disabilities.

9. Maxine Bernstein

Ms. Bernstein was present throughout the trial in the Bundy matter and may testify to those matters that she observed.

    10.    A representative from the United States Department of Justice

As stated above, my investigation has revealed that there may be some coordination between Judge Mosman and the Department of Justice regarding complaints filed against me here and elsewhere. It is anticipated that I may call representative(s) from the Department of Justice to testify regarding communications with Judge Mosman, the prosecutors involved in pursuing the criminal prosecution of me, and communications that they were previously ordered to produce in that prosecution. It is anticipated that they will testify regarding where they obtained the information that they used to include the Bundy matter in their complaint against me, and why they filed their complaint against me while I was in the middle of defending a high-profile defendant being tried in federal court in Utah while also having to respond to the Order To Show Cause in this matter.

    11.    Richard Van Wagoner and Samuel Alba

These attorneys represent me in a disciplinary matter filed against me by the court who I suspect may have been coordinating with Judge Mosman in issuing the Order To Show Cause against me, and where I am having to answer the same allegations arising from the Bundy matter as stated in the Order to Show Cause. It is anticipated that they will testify regarding those matters, and others raised in the order to show cause, and why the court should not impose unwarranted discipline in this matter without regard for how that may be applied by other courts reciprocally.

    12.    Marcus Mumford, Respondent

Judge Michael W. Mosman issued the Order to Show Cause against me on April 12, 2017, ordering that I respond to show why my admission *pro hac vice* should not be revoked for any remaining proceedings in the case captioned *United States v. Ammon Bundy, et al.*, Case No.

3:16-cr-00051-BR, and why I should not be permanently barred from practicing law in the United States District Court for the District of Oregon. Judge Anna J. Brown presided over the *Bundy* trial, which concluded on October 27, 2016, with the jury's verdict acquitting my client, Ammon Bundy, and the other six co-defendants, on all charges of conspiracy and possession of firearms in a federal facility.

    I expect to testify that Judge Brown never sanctioned me, or made any findings of contempt or misconduct on my part. I will testify that I never intentionally failed or refused to observe court rulings in defending Mr. Bundy, and it concerns me that the OSC gives such a misleading presentation of what actually occurred at trial. Nor did I improperly argue with Judge Brown or make improper commentary in front of the jury throughout the trial, as the government alleged. Regarding the inclusion of Claud R. Koerber (aka Rick Koerber) on a proffer of potential defense witnesses made by the joint defense team in October 2016, I expect to explain how the OSC mischaracterizes the nature and purpose of the joint proffer that Judge Brown requested, including my role in drafting the document, and omits the specific disclosures that I made to Judge Brown on several prior occasions regarding my relationship with Mr. Koerber – among other things, the OSC suggests that I tried to conceal that Mr. Koerber had been in the courtroom during the trial, but it fails to acknowledge that portion of the transcript early in the case where Judge Brown herself personally invited Mr. Koerber to sit in the courtroom area set aside for members of the defense team. Finally, I expect to testify that the OSC presents an unduly biased and skewed view of court proceedings on October 27, 2016, where U.S. Marshals attacked and tasered me while I was arguing for my client's release after the jury acquitted him on all charges. Contrary to the OSC, I did have a good faith basis to argue for Mr. Bundy's post-acquittal release, and Judge Brown even agreed with my argument in significant part. In fact, as

set forth below, the U.S. Marshals later confirmed to my staff and co-counsel that evening that they did not have – or they could not find – the necessary order to keep Mr. Bundy in custody following the jury's verdict acquitting him. And the record attached to the OSC reveals how the U.S. Marshals who attacked me were acting contrary to Judge Brown's orders. And where the OSC accuses me of "yelling" during my argument for Mr. Bundy's release, it fails to acknowledge how, as soon as Judge Brown made an issue of how loudly I was talking, I rectified matters by moving closer to the microphone and lowering my voice while I continued to argue passionately but professionally for my client's release.[12] Relatedly, as the Court may know, I suffer a life-long speech impediment, and a review of the record that was inexplicably left out of the excerpts attached to the OSC reveals how much more frequently Judge Brown complained during trial that she could **not** hear what I was saying, and to insist that I talk more loudly, not less, when addressing the Court.[13] As I have researched this matter, I have come to learn that there is substantial research documenting how listeners physically react in an adverse manner to people who stutter, and how they frequently misinterpret in a negative way the verbal and nonverbal communications made by people who stutter. This appears to be especially prevalent

---

[12] See courtroom surveillance footage, published by The Oregonian on Feb. 16, 2017, available at https://www.youtube.com/watch?time_continue=43&v=2FKGZAuePKM, and embedded in Maxine Bernstein, *Lawyer Urges Judge To Dismiss Criminal Charges Against Marcus Mumford*, THE OREGONIAN/OREGONLIVE, Feb. 16, 2017, available at http://www.oregonlive.com/oregon-standoff/2017/02/lawyer_urges_judge_to_dismiss.html.

[13] *See, e.g*, *United States v. Ammon Bundy, et al.*, Case No. 3:16-cr-00051-BR, Docket No. 2069-11 (excerpt of Oct. 4, 2016, transcript) at 10:22-11:11 **("THE COURT: I can't hear you at all, Mr. Mumford.")**; Docket No. 2069-12 (excerpt of Oct. 5, 2016, transcript) at 70:8-14 **("THE COURT: Speak up, please, so we can all hear you."**)). Unless otherwise specified, references to "Docket No. ##" or refer to the filings docketed in the *Bundy* matter, Case No. 3:16-cr-00051-BR, including the exhibits attached to the OSC. For additional instances where Judge Brown directed me to speak more loudly or otherwise indicated that she was having a hard time hearing me, see the following references to the rough transcript of trial proceedings (hereinafter referenced as "[DATE] Rough Tr."): **9/15/2016 Rough Tr. at 107**; **9/22/2016 Rough Tr. at 3, 6 & 63**; **9/29/2016 Rough Tr. at 265**; **10/04/2016 Rough Tr. at 18 & 91**; **10/5/2016 Rough Tr. at 111, 151 & 234**; and **10/11/2016 Rough Tr. at 349**.

in authority figures who are inclined to disagree with what the stutterer is saying. In sum, I believe the Court, be it Judge Brown, Judge Mosman, or Your Honor, should be made to understand how its allegations regarding my "style" or "volume" or "conduct" have potentially misconstrued secondary behaviors associated with my speech impediment, and how I have learned to deal with that impediment in a trial setting, as if my conduct warrants court discipline or disbarment.

  Finally, I anticipate that I will testify regarding the events at trial in the Bundy matter, and respond to every specific allegation made in the OSC.

                */s/ Marcus R. Mumford*
                Marcus R. Mumford