Robert C. Weaver, Jr., OSB #801350
E-Mail: rweaver@gsblaw.com
Eric A. Lindenauer, OSB #833721
Email: elindenauer@gsblaw.com
Joseph Arellano, OSB #801518
Email: jarellano@gsblaw.com
Patrick J. Conti, OSB #141308
Email: pconti@gsblaw.com
GARVEY SCHUBERT BARER
121 SW Morrison Street, 11th Floor
Portland, OR 97204
Telephone:  (503) 228-3939

*Attorneys for United States District Court,
District of Oregon*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| In Re:<br><br>MARCUS MUMFORD | Case No. 3:17-mc-00348-JCC<br><br>**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE; MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**<br><br>The Honorable John C. Coughenour<br>United States District Court Western<br>District of Washington |

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE
COURT'S ORDER TO SHOW CAUSE; MEMORANDUM SUPPORTING
PERMANENT *PRO HAC VICE* REVOCATION**

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND ................................................................................................... 3

III.  ANALYSIS ........................................................................................................... 5

   A.  Mr. Mumford's Preliminary Objections to the Show Cause Order Are Meritless. ............ 5

      1.  Judge Mosman validly issued the Show Cause Order, and there are no grounds to disqualify Mr. Weaver. ................................................................................. 5

      2.  Mr. Mumford has received abundant notice and due process. ......................................... 8

      3.  Judge Brown's failure to sanction Mr. Mumford during trial does not immunize his conduct from the Court's scrutiny. ................................................ 9

   B.  The Court Should Permanently Preclude Mr. Mumford From Pro Hac Vice Admission in the District of Oregon. ................................................................ 11

      1.  The Court has the inherent authority to sanction attorneys and revoke their pro hac vice status. ................................................................................. 11

      2.  Mr. Mumford's conduct evinces a pattern of violating the standards of professional conduct required of lawyers practicing before this Court. .............................. 12

      3.  Mr. Mumford's response to the Show Cause Order and conduct in this matter further demonstrates his disregard of the standards of professional conduct. .......................... 13

   C.  Mr. Mumford's Denials of Any Wrongdoing Are Unavailing. ........................................ 16

      1.  As demonstrated in the transcripts, Mr. Mumford repeatedly violated Court rulings and improperly argued with the Court. ..................................... 16

      2.  Mr. Mumford offers no cognizable excuse for commenting on witness testimony in front of the jury. ................................................................... 17

      3.  Mr. Mumford's denial that he breached his duty of candor in proffering Mr. Koerber is itself misleading. .................................................................. 18

      4.  There is no excuse for Mr. Mumford yelling at the Court and contemptuously instructing his client that he was free from custody. .................................... 20

   D.  Revoking Mr. Mumford's Pro Hac Vice Status and Precluding Him From Future Admission Is an Appropriate Sanction. ........................................................ 23

IV.  MATTERS NOT AT ISSUE IN THE DISTRICT COURT'S ORDER TO SHOW CAUSE ............................................................................................................. 25

V.  CONCLUSION ................................................................................................... 26

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE; MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

# TABLE OF AUTHORITIES

**CASES**

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ...................................................... 11, 23

*Chapman v. Pac. Tel.*, 613 F.2d 193 (9th Cir. 1979) ........................................ 2, 13, 16

*Cole v. U.S. Dist. Court for Dist. of Idaho*, 366 F.3d 813 (9th Cir. 2004) ................... 8

*Data Sys. Analysts, Inc. v. Netplex Grp.*, Inc., 187 F.R.D. 181 (D.N.J. 1999) ...... 11, 12

*Ex parte Burr*, 22 U.S. 529 (1824) ................................................................. 23

*Ex parte Robinson*, 86 U.S. 505 (1873) .......................................................... 10

*Gadda v. Ashcroft*, 377 F.3d 934 (9th Cir. 2004) .............................................. 11

*Garth O. Green Enterprises, Inc. v. Standard Plumbing Supply, Inc.*, No. 2:15-CV-00556-DN-EJF, 2017 WL 1843097 (D. Utah May 5, 2017) ................................................... 24

*In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136 (6th Cir. 1990) ..................................... 8

*In re Brown*, 408 B.R. 509, 526 (Bankr. D. Idaho 2009) ........................................ 11

*In re Bundy*, 840 F.3d 1034 (9th Cir. 2016), *subsequent mandamus proceeding*, 852 F.3d 945 (9th Cir. 2017) ........................................................... 1, 14, 23

*In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d 1020 (9th Cir. 1981) .................. 6, 7

*Johnson v. Trueblood*, 629 F.2d 302 (3d Cir. 1980) ...................................... 8, 10, 11

*Lasar v. Ford Motor Co.*, 399 F.3d 1101 (9th Cir. 2005) .............................. 8, 11, 23

*Loftus v. Southeastern Penn. Transp. Auth.*, 8 F.Supp.2d 458 (E.D.Pa 1998) ............ 10

*Maness v. Meyers*, 419 U.S. 449 (1975) ......................................................... 13

*MGIC Indem. Corp. v. Moore*, 952 F.2d 1120 (9th Cir.1991) .................................... 11

*Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112 (9th Cir. 2000) ...... 9, 11, 22

*Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435 (9th Cir. 1983) ................. 11

*Pennsylvania v. Local Union 542, Int'l Union of Operating Engineers*, 552 F.2d 498 (3d Cir.1977) ........................................................... 17

*Stringer v. United States*, 233 F.2d 947 (9th Cir. 1956) .......................................... 7

*United States v. Bundy, et al.*, 3:16-cr-0051-BR ........................................... 1, 3

*United States v. Collins*, 920 F.2d 619 (10th Cir. 1990) .............................. 10, 11, 23

*United States v. Dowdy*, 960 F.2d 78 (8th Cir.1992) ...................................... 14, 17

*United States v. Galin*, 222 F.3d 1123 (9th Cir. 2000) .......................................... 16

*United States v. Moody*, 977 F.2d 1420 (11th Cir. 1992) ........................................ 8

*United States v. Mumford*, Case No. 3:17-CR-0008-JCC (D. Or.) .............................. 5, 6

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

*Utah Republican Party v. Herbert*, No. 2:14-CV-00876-DN-DBP, 2015 WL 6394534
(D. Utah Oct. 22, 2015) ......................................................................... 23

*Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194 (9th Cir. 1999) ................................. 11

*Wheat v. United States*, 486 U.S. 153 (1988) ......................................... 14

*Williamson v. Indiana Univ.*, 345 F.3d 459 (7th Cir.2003) ......................................... 7

## RULES

Local Rule 83-7 ............................................................................................... 2, 12

N.D. Cal. L.R. 11-6 .......................................................................................... 10

Ninth Circuit Rule 46-2 .................................................................................... 10

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

The United States District Court for the District of Oregon, by and through Garvey Schubert Barer, an Interested Party, respectfully submits this opposition to Marcus R. Mumford's ("Mr. Mumford's") Response to the Court's Order to Show Cause Dated April 12, 2017, and Issued in *United States v. Ammon Bundy, et al.*, Case No. 3:16-CR-00051, and Memorandum in support of sanctions against Mr. Mumford, specifically revocation of his *pro hac vice* status and permanent preclusion from future *pro hac vice* admission to this Court.

## I.    INTRODUCTION

This matter comes before the Court on its Order to Marcus R. Mumford to Show Cause Why *Pro Hac Vice* Should Not Be Revoked. (Dkt. No.[1] 2069, "Show Cause Order" or "OSC.") The Show Cause Order identifies five bases for sanctions: (1) repeated failures or refusals to observe Court rulings; (2) repeated instances of improperly arguing with the Court; (3) inappropriate commentary on testimony of a witness in the presence of the jury; (4) proffering as substantive evidence the fact testimony of Claud R. Koerber without disclosing he was subject to the Court's witness exclusion order; and (5) arguing for Ammon Bundy's release from custody without a good faith basis to believe that he was not subject to a  pre-existing custody order from the District of Nevada, refusing to accept the Court's ruling against release and yelling in response to the Court's ruling.  Attached to the Show Cause Order are hundreds of pages of trial transcript substantiating these bases.  Viewed in total, the excerpted transcripts, and documents cited in the Show Cause Order, evince a deep and continuing pattern of disrespect by Mr. Mumford for this Court and its proceedings.  Sanctions are warranted to protect "the orderly administration of justice."  *In re Bundy*, 840 F.3d 1034, 1046 (9th Cir. 2016), *subsequent mandamus proceeding*, 852 F.3d 945 (9th Cir. 2017).

---

[1] Unless otherwise specified, all citations to the Court's docket are for this case or *United States v. Bundy, et al.*, Case No. 3:16-CR-00051.

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE; MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

After Mr. Mumford repeatedly failed to file a timely response to the Show Cause Order, the Court accepted Mr. Mumford's provisional response filed on November 10, 2017. (Dkt. No. 7-1, the "Response.") Rather than identify mitigating circumstances for his conduct or otherwise assuring the Court any future appearance will comport with accepted rules of professional conduct, he instead argues at great length that he was right and Judge Brown was wrong in instances where he failed to respect her rulings and directions. These arguments only demonstrate Mr. Mumford fails to apprehend the central issue. Advocates can be expected to disagree with the Court's rulings and directives. But the Court's ability to function depends on attorneys before it respecting the Court's decisions and instructions regardless of disagreement. *See Chapman v. Pac. Tel.*, 613 F.2d 193 (9th Cir. 1979) (holding attorneys are bound to obey court orders even if they believe they are clearly erroneous). Mr. Mumford's conduct and his Response demonstrate his inability to grasp this concept.

The Response further demonstrates Mr. Mumford's unwillingness to show "the respect due to courts of justice and judges." L.R. 83-7(a). The Response baselessly attacks the integrity of the Court, and specifically accuses Judge Mosman of pursuing a personal vendetta against him. According to Mr. Mumford, "Judge Mosman issued the OSC with the … intent of harming my reputation and livelihood" (Response at 16)[2], and the Judge put forth a "blatantly false factual basis" for sanctions. (*Id.* at 11.) He further asks that the Court to "shove [a letter] in Judge Mosman's face." (*Id.* at 31.) These ill-considered attacks on the Court further demonstrate Mr. Mumford is incapable of composing himself in an acceptable manner.

In addressing the appropriate sanction, the Court can and should note Mr. Mumford's disregard for the Court's rules, orders and expected decorum is part of a larger pattern. The District of Utah has sanctioned and held Mr. Mumford in contempt. The Tenth Circuit has

---

[2] Citations herein to page numbers in the Response refer to the page numbers in the document header affixed at the time of filing by the ECF system.

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

2

admonished Mr. Mumford for his "pattern … of disregard for the courts rules, orders and deadlines." (*See* Dkt. No. 15.)  He has even in this very disciplinary proceeding repeatedly ignored the Court's orders.  (*See* Dkt. Nos. 3, 5, 6, 9, 13, 17 and 23.)  Mr. Mumford's history and continuing conduct provide no reason for the Court to believe that Mr. Mumford will not similarly violate its rules and abuse its process if he is allowed to appear before it again.  The Court should revoke his *pro hac vice* status with the District of Oregon and permanently preclude him from future *pro hac vice* admission.

## II.    BACKGROUND

This Show Cause Order stems from Mr. Mumford's conduct in *United States v. Bundy, et al.*, 3:16-cr-0051-BR (the "Underlying Case"), a month-and-a-half long trial before Judge Anna Brown.  The Court admitted Mr. Mumford, *pro hac vice*, to represent Ammon Bundy. (Dkt. No. 665.)  During trial, Mr. Mumford repeatedly failed to observe and honor court rulings. (OSC, Ex.1 at 5-11; Ex. 4 at 4-9; Ex. 12 at 65-66; Ex. 16 at 4-6; Ex. 19 at 5-7.)  He yelled and acted in an aggressive manner to the Court on multiple occasions.

- "And don't raise your voice."  (OSC, Ex.12 at 6:3.)
- "Please don't shout at me."  (*Id.* at 35:13.)
- "I can't hear your argument if you keep threatening me."  (*Id.* at 36:9-10.)
- "Mr. Mumford, you really need to not yell at me now or ever again."  (*Id.*, Ex. 21 at 30:3-4.)

He repeatedly argued with the Judge in the presence of the jury.

- "We're not going to take this up in the jury's presence."  (*Id.*, Ex. 12 at 55; *see also id.*, Ex. 4 at 32-34; Ex. 12 at 54-56.)

And, he improperly commented on testimony in front of the jury.  (*Id.*, Ex. 20 at 14-15.)

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

3

After the jury acquitted Mr. Mumford's client, Ammon Bundy, of all charges, the Court ruled that Mr. Bundy would remain in the custody of the United States Marshals: "[Mr. Bundy's] not leaving the jail, however, because of the hold [by the District of Nevada.]"  (*Id.*, Ex. 21 at 29:14.)  Mr. Mumford responded by instructing his client, without a good faith basis, that his client was free to leave.

> MR. MUMFORD: And what I'm saying is if they have papers, an arrest warrant for Mr. -- Mr. Bundy, to transport him, then I'm happy to see that; but until I do, my instruction to him is he is free to leave.
>
> THE COURT: Well, he can do what he wishes, but he's in the marshals' custody right now, and he needs to go back with them right now to the jail because of the hold.
>
> MR. MUMFORD: No, he does not. He is free.
>
> THE COURT: Mr. Mumford, you can take it up to a higher court now. Take Mr. -
>
> MR. MUMFORD: He's free, Your Honor.

(*Id.* at 30:14-24.)

On April 12, 2017, the Court entered the Show Cause Order attaching over 500 pages of trial transcript evincing Mr. Mumford's pattern of disrespect for the Court and disregard for the Court's rulings and authority.  On May 17, 2017, the Ninth Circuit designated the Honorable John Coughenour, United States Senior District Judge for the Western District of Washington, to preside over the Show Cause Order.  (Dkt. No. 2100.)  On June 22, 2017, the Court appointed Robert C. Weaver, Jr. to represent the District Court's interests in the Show Cause Order.  (Dkt. No. 2145.)

The Court entered the parties' joint proposed scheduling order which gave Mr. Mumford until August 8, 2017 to request the production of final transcript excerpts, and until October 17, 2017 to file a response to the Show Cause Order.  The District Court's opposition to Mr. Mumford's response was due November 17, 2017.  (Dkt. No. 2192.)

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

Mr. Mumford has repeatedly violated the Scheduling Order and multiplied this proceeding. The Court has well summarized in its orders Mr. Mumford's violations. (*See* Dkt. Nos. 3, 5, 6, 9, 13, 17 and 23.) The Court accepted Mr. Mumford's provisional brief as his response to the Show Cause Order on November 13, 2017. This memorandum addresses Mr. Mumford's Response and the bases and justification for sanctioning Mr. Mumford.

## III.   ANALYSIS

### A.   Mr. Mumford's Preliminary Objections to the Show Cause Order Are Meritless.

Mr. Mumford's Response starts with a series of objections to the validity of the Show Cause Order, the appointment of Robert Weaver to represent the Court, the amount of notice and due process provided, and the legitimacy of this proceeding. These threshold objections are meritless and should be summarily overruled.

### 1.   Judge Mosman validly issued the Show Cause Order, and there are no grounds to disqualify Mr. Weaver.

Mr. Mumford first contends Judge Mosman's recusal from a criminal case against Mr. Mumford invalidates his entry of the Show Cause Order and that his later appointment of Mr. Weaver to represent the District Court's interests is tainted. Mr. Mumford's argument as to the validity of the Show Cause Order has no factual basis and his objection to the appointment of Mr. Weaver has no basis in law.

At the conclusion of the Underlying Case, after the Court ordered Mr. Mumford's client shall remain in custody, Mr. Mumford – in contempt of that order – instructed his client that he was free. (OSC, Ex. 21 at 29:2-32:14.) This was followed by an altercation between Mr. Mumford and the United States Marshals.[3] Criminal charges were filed against Mr. Mumford. *See United States v. Mumford*, Case No. 3:17-CR-0008-JCC (D. Or.) ("*United*

---

[3] Mr. Mumford's altercation with the U.S. Marshals is not a basis for the Order to Show Cause as discussed more fully in Section IV below.

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

5

*States v. Mumford*").  Anticipating those charges, Mr. Mumford emailed Judge Mosman asking for discovery materials relating to the government's case against him.  Declaration of Patrick J. Conti in Support of Response to Marcus Mumford's Provisional Response to the Court's Order to Show Cause and Memorandum Supporting Permanent *Pro Hac Vice* Revocation ("Conti Decl."), Ex. 1.  Judge Mosman responded that Mr. Mumford should avoid *ex parte* communications with the Court, and that the judges "in this district have been recused from *this case*."  (*Id.* (emphasis added).)  Nothing in this email suggests that Judge Mosman recused himself from anything other than *United States v. Mumford*, or that Judge Mosman at that time recused himself from the Underlying Case or matters concerning Mr. Mumford's *pro hac vice* admission.

In April 2017, Judge Mosman entered the Show Cause Order.  The following month, he recused himself from all proceedings related to Mr. Mumford's *pro hac vice* status to avoid any possible perception of bias or prejudice.  (Dkt. No. 2101.)  The Ninth Circuit appointed Judge Coughenour to adjudicate this matter.  (Dkt. No. 2100.)  On June 22, 2017, Judge Mosman appointed Mr. Weaver to represent the Court's interests in this show cause matter.  (Dkt. No. 2145.)

Mr. Mumford first objects that Judge Mosman's entry of the Show Cause Order is invalid because Judge Mosman had recused himself before entering the order.[4]  Once a judge is recused from a case, the judge's authority in that case is limited to "ministerial duties."  *In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d 1020, 1024-25 (9th Cir. 1981); *see also Stringer v.*

---

[4] The inclusion of Judge Mosman on Mr. Mumford's recently filed witness list suggests that Mr. Mumford intends to cross-examine Judge Mosman on the validity of the Show Cause Order and likely also pursue Mr. Mumford's conspiracy theory that Judge Mosman has some personal vendetta against him.  Counsel for the District Court will ask this Court to preclude Mr. Mumford from attempting to pursue this improper, collateral attack on Judge Mosman and the validity of his Show Cause Order.

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

6

*United States*, 233 F.2d 947, 948 (9th Cir. 1956) (same). Mr. Mumford's argument fails for the simple reason that Judge Mosman had not recused himself from either the Underlying Case or issues surrounding Mr. Mumford's *pro hac vice* admission prior to entry of the Show Cause Order. This is obvious considering the Judge later entered a separate order recusing himself from this matter *after* he entered the Show Cause Order. (Dkt. No. 2101 ("I disqualify myself from all further matters concerning Mr. Mumford's *pro hac vice* admission in the United States District Court for the District of Oregon.").) There is thus no issue over whether Judge Mosman exceeded his powers at the time he entered the Show Cause Order because he was not recused.

However, even if Judge Mosman had recused himself, that still would not have precluded him from entering the Show Cause Order as a function of his responsibility as the Court's Chief Judge. The Court has the responsibility to ensure that its rules are followed and its proceedings protected. If Mr. Mumford's argument were correct, neither the Chief Judge nor any judge of the Court could initiate sanctions against Mr. Mumford. This would be tantamount to Mr. Mumford receiving a free pass because there would no judges with the responsibility and authority to initiate this show cause matter. Moreover, Mr. Mumford's argument to invalidate the Show Cause Order fails because he can identify no cognizable prejudice considering the matter will be adjudicated by an impartial judge assigned by the Ninth Circuit. *See, e.g*, *Williamson v. Indiana Univ.*, 345 F.3d 459, 464-65 (7th Cir.2003) (refusing to reverse ruling based on recusal because "this court reviews the grant of summary judgment de novo ... and therefore Williamson has received a full review by an impartial panel.").

Judge Mosman's order appointing Mr. Weaver does postdate his recusal from this matter. However, the objection to his appointment lacks a basis in the law. A recused judge retains the authority to enter ministerial orders, such as orders assigning a case to a different judge. *In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d at 1024-25 ("[W]e refuse to construe the

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

7

word 'proceeding' to include the performance of ministerial duties such as assigning a case to another judge."); *see also United States v. Moody*, 977 F.2d 1420, 1423 (11th Cir. 1992) ("Chief Judge Tjoflat's assignment of Judge Alaimo was a purely ministerial act, without any implication concerning the merits of the case."); *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1145 (6th Cir. 1990) (upholding orders entered by a recused judge setting cases for trial and reassigning case to another judge). Judge Mosman's appointment of Mr. Weaver was even more removed from involvement in the merits than the act of appointing a case to a judge for adjudication, and was squarely a ministerial act. There is no basis to disqualify Mr. Weaver.[5]

Accordingly, the Court should overrule Mr. Mumford's objections that the Show Cause Order is invalid because it was entered by a recused judge or that Mr. Weaver should be disqualified as counsel for the District Court.

### 2.    Mr. Mumford has received abundant notice and due process.

Before the Court may revoke an attorney's right to appear before it, the attorney must be provided notice and an opportunity to be heard. *Cole v. U.S. Dist. Court for Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004). This requires notifying the attorney of "the grounds for, and possible types of, sanctions" being considered. *Id.* This allows the attorney "to argue that his actions were an acceptable means of representing his client, to present mitigating circumstances, or to apologize to the court for his conduct." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005). The notice need not be formal. *Johnson v. Trueblood*, 629 F.2d 302, 303-04 (3d Cir. 1980). Indeed, the Ninth Circuit has held that "[t]he opportunity to brief the issue [of sanctions] fully satisfies due process requirements." *Lasar*, 399 F.3d at 1112 (quoting *Pac. Harbor*

---

[5] While irrelevant, Mr. Mumford asserts that Mr. Weaver and Judge Mosman used to be colleagues and are friends. Their respective tenures at the United States Attorney's Office did not overlap. And, Mr. Mumford fails to explain how their alleged "friendship" taints Mr. Weaver's appointment and appearance before Judge Coughenour.

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

8

*Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000)). Considering the detailed Show Cause Order issued by the Court, and Mr. Mumford's 129-page brief in response, he cannot seriously argue that he lacks notice of the basis for sanctions.

Mr. Mumford's Response acknowledges the Court has inherent authority to sanction counsel who appear before it. (*See* Response at 24.) Pursuant to that authority, the Show Cause Order identifies five bases for revoking Mr. Mumford's *pro hac vice* status. For each it specifies Mr. Mumford's conduct that supports the basis by citing court filings and attaching trial transcripts. The Show Cause Order also identifies the sanction the Court is contemplating. Additionally, the Court has explained that Mr. Mumford is expected to show why his actions did not violate the Standards of Professional Conduct for the Court set forth in L.R. 83-7. (Dkt. No. 2101 at 2.) The Court also issued a scheduling order providing Mr. Mumford months to prepare and file a response and reply to the Show Cause Order. Mr. Mumford has been granted a two-day evidentiary hearing. This entire process demonstrates Mr. Mumford has received and is receiving the due process he bemoans he has been denied.

### 3. Judge Brown's failure to sanction Mr. Mumford during trial does not immunize his conduct from the Court's scrutiny.

While the transcript excerpts attached to the Show Cause Order show that Judge Brown repeatedly admonished Mr. Mumford and threatened to hold him in contempt, she never sanctioned him. Mr. Mumford highlights this as evidence that his conduct during trial in the Underlying Case did not exceed acceptable bounds. It shows no such thing.

Little can be inferred from Judge Brown not sanctioning Mr. Mumford during trial. The Underlying Case was a criminal case with seven defendants that stretched on for nearly two months, all in the national spotlight. The Judge certainly had reasons to hesitate interfering with the case reaching the jury. Moreover, as described more fully below, the egregiousness of Mr. Mumford's trial conduct comes into full view when viewed in the aggregate. Even if

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

9

Mr. Mumford's identified actions taken in isolation did not significantly impede the orderly administration of justice when viewed in total, as seen in the transcripts attached to the Show Cause Order, they were unacceptable. It is thus appropriate for the Court to now review Mr. Mumford's overall conduct even though Judge Brown did not sanction him for any individual act. The fact Judge Brown did not sanction Mr. Mumford during trial does not mean his conduct cannot be examined now.

Nor, as he suggests, is there anything unusual about the issuance of the Show Cause Order after trial concluded. Courts may rule on sanctions after judgment is entered. *Loftus v. Southeastern Penn. Transp. Auth.*, 8 F.Supp.2d 458, 461, n. 4 (E.D.Pa 1998). And, this includes revocation proceedings for conduct that occurred during trial. *See Johnson*, 629 F.2d at 304 (noting that where *pro hac vice* revocation order was entered after verdict for "conduct during the trial" the "matter of revocation" should be assigned to another judge).[6] As the Chief Judge of the District, Judge Mosman has the authority to initiate this disciplinary matter by way of a show cause order. *See* Ninth Circuit Rule 46-2 ("The Chief Judge … may initiate disciplinary proceedings based on conduct before this Court by issuing an order to show cause …."); N.D. Cal. L.R. 11-6 (recognizing the Chief Judge's role in administering the court's disciplinary process).

/ / /

/ / /

---

[6] The Response's suggestion (at 27) that courtroom conduct can only be sanctioned during trial is contradicted by the cases it cites. *Ex parte Robinson*, 86 U.S. 505 (1873), merely stands for the broad proposition that courts have the inherent power to disbar attorneys who are unfit. *United States v. Collins*, 920 F.2d 619, 628 (10th Cir. 1990), simply states the obvious: that a judge "must make an immediate decision" when deciding to *disqualify* a party's counsel of choice during trial. Neither case supports Mr. Mumford's proposition that the Court cannot, under its inherent authority, sanction Mr. Mumford post-trial for conduct that took place during trial.

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

10

### B. The Court Should Permanently Preclude Mr. Mumford From *Pro Hac Vice* Admission in the District of Oregon.

#### 1. The Court has the inherent authority to sanction attorneys and revoke their *pro hac vice* status.

District courts have the responsibility to control the conduct of the attorneys before them. *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 438 (9th Cir. 1983). With that responsibility comes the inherent authority to sanction attorneys to ensure the orderly and expeditious disposition of cases. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "Justifications for imposing sanctions on an attorney include the attorney's willful abuse of the judicial process, bad faith conduct during litigation, or filing frivolous papers." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999) (internal citations and quotation marks omitted). Bad faith is assessed under a subjective standard and "[k]nowing or reckless conduct meets this standard." *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1119 (9th Cir. 2000) (quoting *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1121–22 (9th Cir.1991)). Violating accepted rules of professional conduct further supports entry of sanctions. *United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990). The Court should exercise its inherent power to sanction "with restraint and discretion." *Gadda v. Ashcroft*, 377 F.3d 934, 948 (9th Cir. 2004).

"Revocation of *pro hac vice* admission is a recognized sanction for violation of court orders or disciplinary rules." *Data Sys. Analysts, Inc. v. Netplex Grp.*, Inc., 187 F.R.D. 181, 183–84 (D.N.J. 1999); *see also Johnson*, 629 F.2d at 304 ("At a minimum, a violation of any disciplinary standard applicable to members of the bar of the court would justify revocation of *pro hac vice* status."). The Ninth Circuit has affirmed revocation of *pro hac vice* admissions for violating an order *in limine*, *Lasar*, 399 F.3d at 1115, and inexcusably instructing a client contrary to the terms of a temporary restraining order. *Pac. Harbor Capital, Inc.*, 210 F.3d at 1119; *see also In re Brown*, 408 B.R. 509, 526 (Bankr. D. Idaho 2009) (barring counsel from

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

11

practicing in the court for repeatedly violating court orders); *Data Sys. Analysts, Inc.*, 187 F.R.D. at 184 (revoking *pro hac vice* status for violation of "a series of Court Orders," "lack of candor … and … failure to keep his clients advised").

> **2. Mr. Mumford's conduct evinces a pattern of violating the standards of professional conduct required of lawyers practicing before this Court.**

The Court's Show Cause Order and attached exhibits show that Mr. Mumford repeatedly ignored Court orders and rulings, disrespected the Court, inappropriately commented in front of the jury, made arguments without a good faith basis, and breached his duty of candor.  In short, the exhibits evince a pattern of offensive and unprofessional conduct unbecoming of a member of the bar and violative of Local Rule 83-7.  The breadth and frequency of this misconduct demonstrates a contempt for the Court's authority and a refusal to abide by the rules and practices.  To illustrate this pattern, the attached Exhibit A summarizes the instances of Mr. Mumford's misconduct found in the transcripts attached to the Show Cause Order.  A few of these examples include:

- Mr. Mumford repeatedly asked questions contrary to the Court's prior rulings. (OSC Ex. 12 at 66:7-8 ("This is a line of questioning I've told you not to pursue."); Ex. 13 at 20:6-7 ("Mr. Mumford, you can't keep asking questions after the objection has been sustained."); *see also* Ex. 1 at 5-11, 20-21; Ex. 3 at 10; Ex. 4 at 28-31; Ex. 6 at 7-12; Ex. 9 at 18-19, 21-25, 29-31; Ex. 13 at 4-6; Ex. 19 at 5-7).

- He continued to argue after Judge Brown's rulings, often in front of the jury. (*Id.*, Ex. 12 at 26:22-24 ("I am making rulings here.  You don't get to debate them now in the jury's presence…."); Ex. 4 at 32-34; Ex. 10 at 23-24; Ex. 12 at 54-56.)

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

- This required the Court to repeatedly instruct Mr. Mumford to "move on." (*Id.*, Ex. 1 at 5-11; Ex. 3 at 4-6, 28-31; Ex. 7 at 4-9; Ex. 8 at 4-8; Ex. 9 at 18-19, 21-25, 29-31; Ex. 10 at 15-16; Ex. 11 at 5-6; Ex. 14 at 8-11; Ex. 15 at 5-7; Ex. 16 at 4-6; Ex. 19 at 5-7.)

- Mr. Mumford even instructed his client he could ignore a Court ruling. (*Id.*, Ex. 21 at 30:10-17.)

- And, the Court regularly had to admonish Mr. Mumford for his demeanor. (*Id.*, Ex. 12 at 6:6, 12:21, 26:10-16, 35:13, 36:9-10; Ex. 21 at 3:3-4.)

The totality of Mr. Mumford's conduct evinces a clear and convincing pattern of disrespect for the Court. Disrespect for the Court and disregard for its rulings and orders cannot be swept under the rug of "zealous advocacy." Rather than justify his conduct, such arguments merely confirm Mr. Mumford's refusal to recognize or take responsibility for his conduct. Sanctions are warranted.

> **3.** **Mr. Mumford's response to the Show Cause Order and conduct in this matter further demonstrates his disregard of the standards of professional conduct.**

In his Response, Mr. Mumford repeatedly argues his conduct was justified because he was right and Judge Brown was wrong in various rulings. (*See, e.g.*, Response at 54-56, 62-65, 73-75, 106-08.) The appropriateness of Mr. Mumford's conduct does not depend on the correctness of Judge Brown's rulings and orders. *Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."); *Chapman*, 613 F.2d at 193 (same). Mr. Mumford's lengthy explanations on the correctness of his questions and arguments at trial identify a larger problem: Mr. Mumford refuses to acknowledge that right or wrong, court rulings must be observed and respected. *United States v. Dowdy*, 960 F.2d 78,

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

13

81 (8th Cir.1992) ("Once a judge has ruled, the recourse of a zealous advocate lies in challenging the legality of that ruling on appeal, not in denigrating the wisdom and fairness of the court.").

Moreover, Mr. Mumford takes no responsibility for his conduct but instead insists that the Show Cause Order was entered "with the intent of harming [his] reputation and livelihood." (Response at 16.) He appears incapable of recognizing that the Court has an interest in ensuring "that criminal trials are conducted within the ethical standards of the profession." *In re Bundy*, 840 F.3d at 1042 (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988)). Mr. Mumford instead sees this proceeding as a personal vendetta by Chief Judge Mosman against him.

Mr. Mumford accuses Judge Mosman's Show Cause Order of

- providing a "blatantly false factual basis" (Response at 11);
- "pil[ing] on with false accusations …." (*id.* at 44);
- being a "perverse reckoning to settle scores" and "vindictive" (*id.* at 22); and
- possibly the product of "coordination between the government and the court" (*id.* at 22).[7]

These unfounded attacks on the Court's integrity indicate that any future admission of Mr. Mumford to practice before this Court would again "impede the orderly administration of justice." *See In re Bundy*, 840 F.3d at 1046 (affirming denial of counsel's *pro hac vice* application who "failed to accept any responsibility for his actions" and instead "claimed that the judges were being 'vindictive'").

Mr. Mumford's Response also repeatedly and knowingly violates the Court's "absolute order" against citing the rough transcript from the trial. The Court expressly prohibited any party citing or quoting roughs of the trial transcript. Conti Decl., Ex. 2. ("This transcript may NOT be cited or quoted in documents ….").

---

[7] He also, contravening basic decorum and the respect due the Court, asks Judge Coughenour to "shove [a letter] in Judge Mosman's face." (Response at 31.)

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

Mr. Mumford was and is well aware of this prohibition. In the Underlying Case, Judge Brown admonished Mr. Mumford for citing to a rough transcript. The Court made plain, "you may not cite to a rough transcript…. This is an **absolute order**." (OSC, Ex. 1 at 5:1-5 (emphasis added).) Because of this prohibition, Mr. Mumford filed a Motion to Compel a Complete Set of Final Transcripts in this disciplinary matter, "lest my response to the Court's OSC be deemed a 'further' or 'repeated' violation of the rule." (Dkt. No. 2084 at 2.) The Court accordingly provided Mr. Mumford a rough draft transcript of the entire criminal trial, subject to the prohibition, and gave him until July 20, 2017 to identify and request any portions he needed in final form to respond to the Show Cause Order. (Dkt. Nos. 2121 and 2141.) Despite receiving extensions, Mr. Mumford never requested any final transcripts.

Mr. Mumford nevertheless cites to and quotes from the rough transcript countless times. (*See, e.g.*, Response at 4, 52-53, 55-58, 60-61, 66, 70, 72-75, 78-82, 84-85, 89-90, 92-94, 100-102, 104-14, 117, 120, & 123-28.) He does so in complete disregard of the Court's "absolute order." This flagrant violation is bizarre considering he simultaneously touts his compliance with the prohibition against citing rough transcripts. (*Cf. id.* at 48-49 ("This example [of apologizing to Judge Brown after mistakenly quoting a rough transcript] helps demonstrate why Judge Mosman's OSC is unwarranted.") *with id.* at 52 & 58 (citing and quoting from the rough transcript).)[8] All references to the rough transcript should be stricken.

/ / /

/ / /

/ / /

---

[8] The Court is also well aware of Mr. Mumford's repeated disobedience of Court orders and rules within the disciplinary proceeding. (*See* Dkt. Nos. 3, 5, 6, 9, 13, 17 and 23.) This is astounding given that he is before the Court to determine what sanctions are warranted in light of his "[r]epeated failures or refusals to observe Court rulings."

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

## C.    Mr. Mumford's Denials of Any Wrongdoing Are Unavailing.

### 1.    As demonstrated in the transcripts, Mr. Mumford repeatedly violated Court rulings and improperly argued with the Court.

Paragraph 1 of the Show Cause Order identifies and attaches 34 trial transcript excerpts showing Mr. Mumford repeatedly failing to heed court rulings.  Paragraph 2 of the Show Cause Order identifies and attaches 18 instances of Mr. Mumford improperly arguing with the Court, often in front of the jury.  (*See* Exhibit A attached hereto.)  Mr. Mumford takes no responsibility for this conduct.  Instead, he provides misleading and inaccurate explanations of the transcript excerpts to suggest he did nothing wrong.  It is neither necessary nor appropriate to respond to each of Mr. Mumford's individual explanations.  The transcripts speak for themselves. Mr. Mumford's failure to heed Court rulings and improper argument with the Court is plain to see.

Mr. Mumford insists Judge Brown was often in the wrong and thus his conduct was appropriate under the circumstances.  This reveals Mr. Mumford's fundamental misunderstanding of the standards of conduct for attorneys before this Court.  Mr. Mumford must obey court orders, even if he believes an order is erroneous.  *See Chapman*, 613 F.2d at 193.

He argues that often he re-asked questions despite Court rulings or argued points with the Court in order to protect his record for appeal.  Notably, he "never indicated that preservation of the record was his intent."  *United States v. Galin*, 222 F.3d 1123, 1126 (9th Cir. 2000) (denying argument that repeated violations of court instructions was appropriate so as to protect the record for appeal).  The Court expressed to Mr. Mumford many times that if he needed to make an offer of proof or otherwise protect his record, he should ask the Court for the opportunity to do so outside of the presence of the jury.  (*See, e.g.*, OSC, Ex. 6 at 10:4-6 ("And if you believe you need to, then tell me you have a matter for the Court, I'll excuse the jury, and I'll field the

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

16

question.").)  Even if the Court denied him that opportunity it would be an issue for

Mr. Mumford to raise on appeal, not a justification for violating Court rulings.  *Pennsylvania v.*

*Local Union 542, Int'l Union of Operating Engineers*, 552 F.2d 498, 508 (3d Cir.1977) ("[A]

trial attorney's belief that certain action is necessary to protect the record for appellate review

does not excuse his deliberate defiance of the trial judge's explicit and repeated orders.").

He also suggests he never did anything unprofessional or inappropriate because

*eventually* he accepted the Court's ruling or dropped his argument.  Again, this misses the point.

The orderly administration of justice requires parties respect rulings and the instruction of the

Court.  The fact that Mr. Mumford would eventually "move on" from a topic after the Court

repeatedly instructed him to do so, does not make his conduct appropriate.  (*See, e.g.*, OSC, Ex. 4

at 30-31; Ex. 7 at 4-9; Ex. 8 at 4-8; Ex. 9 at 21 to 25.)  To the opposite, it underscores

Mr. Mumford's willingness to do what he wishes without regard to the Court's rules or

procedures.  *Dowdy*, 960 F.2d at 81 ("Once a judge has ruled, the recourse of a zealous advocate

lies in challenging the legality of that ruling on appeal, not in denigrating the wisdom and

fairness of the court.").

### 2. Mr. Mumford offers no cognizable excuse for commenting on witness testimony in front of the jury.

Paragraph 3 of the Show Cause Order identifies inappropriate commentary by

Mr. Mumford on the testimony of a witness in the presence of the jury.  Specifically,

Mr. Mumford thanked a witness at the conclusion of cross examination for "not saying

anything."  (OSC, Ex. 20 at 14:20-21.)  Mr. Mumford acknowledges that he "should have saved"

his commentary … for closing argument."  (Response at 127.)  He seems to consider his conduct

mitigated by his contention that "Judge Brown's rulings during my cross-examination of [the

witness] were clearly erroneous."  Again, Mr. Mumford fails to recognize the need to respect

rulings he disagrees with.

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE
COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING
PERMANENT *PRO HAC VICE* REVOCATION**

### 3. Mr. Mumford's denial that he breached his duty of candor in proffering Mr. Koerber is itself misleading.

Paragraph 4 of the Show Cause Order addresses Mr. Mumford's proffer of witness Claud R. Koerber without disclosing that he was Mr. Mumford's paralegal attending trial, using the name Rick Koerber, whose testimony would violate the Court's witness exclusion order. Mr. Mumford additionally never disclosed that Mr. Koerber was his client in an unrelated, ongoing criminal proceeding.

The facts here are not in dispute. Mr. Mumford does not and cannot dispute that he knew that the Court had excluded witnesses from attending trial. On both October 4 and October 5, 2016, Judge Brown expressly reminded counsel of their responsibility to be certain that witnesses they call do not observe court proceedings. (OSC, Ex. 24 at 4.) As the Court stated, "it's your job to ensure your witnesses follow the witness exclusion rule." (OSC, Ex. 25 at 4.) Nor does Mr. Mumford dispute that he knew that his paralegal attended court proceedings; or that Mr. Koerber used the name Rick as a paralegal but Mr. Mumford proffered him as Claud R. Koerber. In proffering him as a fact witness, Mr. Mumford failed to inform the Court that Mr. Koerber had participated in the trial. Mr. Mumford makes a series of irrelevant and misleading arguments.

First, he argues that Judge Brown was or should have been on "notice" that Mr. Koerber went by both Rick and Claud and thus the fact that Mr. Mumford proffered him under the name Claud is irrelevant. Even if accurate, this in no way refutes Mr. Mumford's lack of candor to the Court.

Mr. Mumford disingenuously suggests that perhaps he was not the lawyer who proffered Mr. Koerber and thus it would be inappropriate to hold him responsible for the proffer. He also argues that whoever did proffer Mr. Koerber would have done so to provide the government and

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

18

the Court "advance notice that we might be asking for [an exception to the witness exclusion rule for Mr. Koerber]." (Dkt. No. 7-1 at 42.) Neither point withstands scrutiny.

On October 12, 2016, Mr. Koerber was proffered as a substantive fact witness. (Dkt. No. 1424 at 2.) After the Court preliminarily ruled that Mr. Koerber could not testify, *Mr. Mumford* filed and signed a motion seeking reconsideration of that ruling. In eight pages briefing why Mr. Koerber should be allowed to testify, *Mr. Mumford* never indicated that Mr. Koerber was his trial paralegal who would require an exception to the witness exclusion rule. (*Id.* at 18-25.)

In denying Mr. Mumford's motion for reconsideration of Mr. Koerber testifying, Judge Brown explained:

> I didn't make the connection when I read the name on the witness list and – and even when I read through the memorandum, but it was in the context of another reference. If I'm not mistaken, the person you identify – the witness you identify as Mr. Koerber is a paralegal who's been involved in the case, who's been sitting in the courtroom throughout the trial. He cannot testify…. I wanted to be sure I was identifying the right person because I know this person to be Rick Koerber, who was identified with a different name …."

(OSC, Ex. 23 at 4:7-20.)

There is no excuse for Mr. Mumford proffering his trial paralegal with a different name without alerting the Court that he would need to be exempted from the witness exclusion order to testify. In fact, in that same motion for reconsideration wherein Mr. Mumford stayed silent on Mr. Koerber's participation in the trial, Mr. Mumford challenged the Court's preliminary determination that Sheriff Mack could not testify because of his exposure to the trial. Mr. Mumford sought reconsideration on this ruling by arguing the Sheriff did not witness any testimony "and in fact has never been inside this courthouse." (Dkt. No. 1424 at 6-7.)[9]

---

[9] Mr. Mumford appears to take conflicting positions on Sheriff Mack's presence in the courtroom. In his motion for reconsideration he stated that Sheriff Mack had never set foot in the courtroom and accused the government's representation to the contrary of being a "strikingly false allegation." (Dkt. No. 1424 at 6-7.) But here he states that the Court permitted Sheriff

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

19

Mr. Mumford cannot argue in good faith he was unaware of the Court's concerns about the witness exclusion order when he was advocating the Court to reconsider its disallowance of Mr. Koerber's testimony on other grounds. Mr. Mumford offers no excuse for his failure to advise the Court that Mr. Koerber was also his client. Mr. Mumford was not candid with the Court in proffering Mr. Koerber.

<strong>4. There is no excuse for Mr. Mumford yelling at the Court and contemptuously instructing his client that he was free from custody.</strong>

Paragraph 5 of the Show Cause Order identifies Mr. Mumford's heated argument with the Court over the government's detention of his client after acquittal. Mr. Mumford made this argument without a good faith basis to believe that the District of Nevada did not have a preexisting detention order in effect. Mr. Mumford's brief seems to suggest that any shortcomings or inappropriate behavior in declaring his client free from custody stems from a speech impediment. A speech impediment does not excuse contemptuously contradicting the Court, or instructing a client he was free to leave contrary to the Court's express order.

During the criminal trial, Mr. Mumford vigorously litigated against the pretrial detention orders for his client entered by both this Court and the District of Nevada. (*See* Dkt. Nos. 881 and 903.) Mr. Mumford may argue the detention order was invalid, but he obtained no court validation for his position. Neither the District of Nevada nor the District of Oregon took any action or gave any reason to support a good faith belief by Mr. Mumford that the Nevada detention order was not still in place at the conclusion of trial.

---

Mack to testify "notwithstanding the fact that he had been in the courtroom at various times during the trial." (Response at 42.) It is unclear which of these contradictory positions by Mr. Mumford is accurate.

<strong>OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT <em>PRO HAC VICE</em> REVOCATION</strong>

The Court ruled, despite the acquittal, that Mr. Bundy was to remain in custody pursuant to a District of Nevada Detention Order. Mr. Mumford, in an improper exchange, instructed his client he was free to leave.

> THE COURT: Anything else on behalf of the parties?

> MR. MUMFORD: Well, Your -- Your Honor, you're not keeping Mr. Ammon Bundy in custody, though; right?

> THE COURT: I said he is released –

> MR. MUMFORD: Okay. Thank you.

> THE COURT: -- on this charge. But he still is subject to hold by the District of Nevada, so I imagine the District -- there is a hold from the District of Nevada.

> MR. MUMFORD: If they want to come, they know where to find him. I would say –

> THE COURT: Or the government will ask for his transport. But right now he's released on this charge only. **He's not leaving the jail, however, because of the hold.**

> MR. MUMFORD: No, he's leaving the jail. I don't see any paper that would –

> THE COURT: You can take that up with the United States Marshal and not with me. There's not -- **there is a hold in place, sir**, and I'm –

> MR. MUMFORD: No, Your Honor. He is -- he is acquitted.

> …
> THE COURT: Mr. Medenbach – I'm sorry. Mr. Mumford, **you really need to not yell at me now or ever again**.

> …

> What I'm saying is that the marshals -- **the marshals have a hold** -- notice of a hold from Nevada, and you're going to need to take up those issues with Nevada and the marshals. Not with me.

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

21

MR. MUMFORD: And what I'm saying is if they have papers, an arrest warrant for Mr. -- Mr. Bundy, to transport him, then I'm happy to see that; but until I do, **my instruction to him is he is free to leave.**

THE COURT: Well, he can do what he wishes, but **he's in the marshal's custody right now, and he needs to go back with them right now to the jail because of the hold.**

MR. MUMFORD: **No, he does not. He is free.**

THE COURT: Mr. Mumford, you can take it up to a higher court now. Take Mr. -

MR. MUMFORD: He's free, Your Honor.

…

THE COURT: I'm not going to argue with you.

We are in recess.

Mr. Bundy --
U.S. MARSHAL: Come to the fourth floor and we will show you.

U.S. MARSHAL: We'll show it to you.

MR. MUMFORD: **No. No. He is free right here and right now.**

THE COURT: Mr. Mumford.

MR. MUMFORD: **He's free right here and right now.**

(OSC, Ex. 21 at 29:2-34:14.)[10]   Yelling at the Court, insisting his client was free despite a

detention order, and instructing his client he was free from custody in contempt of the Court's

order – alone warrants sanctions.  *See Pac. Harbor Capital, Inc.*, 210 F.3d at 1119 (affirming

revocation of *pro hac vice* status based on, *inter alia*, instructing client in contravention of court

---

[10] The United States Marshals eventually confronted Mr. Mumford and charges were filed against him.  What happened between Mr. Mumford and the Marshals is not the basis for and is irrelevant to the Show Cause Order.  This subsequent altercation with the Marshals nevertheless features prominently in Mr. Mumford's Witness List and Partial Proffer of Testimony.  (*See* Dkt. No. 24 at 3-4).  As discussed in Section IV below, it is simply irrelevant.

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

order and presenting bad faith arguments); *see also Lasar*, 399 F.3d at 1117 ("We conclude that Sutter's violation of the order in limine relating to alcohol could, standing alone, support the district court's decision to revoke Sutter's *pro hac vice* admission.").

> **D.** **Revoking Mr. Mumford's *Pro Hac Vice* Status and Precluding Him From Future Admission Is an Appropriate Sanction.**

With its inherent authority, the Court has the "discretion … to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. Preventing an attorney from practicing before the Court is appropriate if "his admission *pro hac vice* would…'impede the orderly administration of justice.'" *In re Bundy*, 840 F.3d at 1042 (affirming denial of counsel's *pro hac vice* application). Here Mr. Mumford's pattern and practice of violating the standards of professional conduct – including repeated instances of improperly arguing with the Court, serially violating court orders and rulings, instructing a client to disregard the Court's order that he was to be detained, improperly commenting on witness testimony, and displaying a lack of candor and making arguments without a good faith basis – undermines the fair and orderly administration of justice. Excluding Mr. Mumford from practicing before this Court is "necessary for the preservation of decorum, and for the respectability of the profession." *United States v. Collins*, 920 F.2d 619, 634 (10th Cir. 1990) (quoting *Ex parte Burr*, 22 U.S. 529, 531 (1824)).

This sanction is further supported by Mr. Mumford's practice in other courts, and conduct before this Court subsequent to the entering of the Show Cause Order. *In re Bundy*, 840 F.3d at 1046–47 (noting the court should not ignore a lawyer's reputation when deciding on admission to practice before the court). The District of Utah has sanctioned Mr. Mumford and found him to have a "demonstrated inability to manage deadlines" and to "repeated[ly] fail to comply with court orders." *Utah Republican Party v. Herbert*, No. 2:14-CV-00876-DN-DBP, 2015 WL 6394534, at *7 (D. Utah Oct. 22, 2015) (precluding Mr. Mumford's further

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

23

participation in a case absent appearance of new counsel who is not part of Mr. Mumford's firm). The District of Utah has further sanctioned Mr. Mumford for frivolous practice, held him in contempt, and barred him from appearing in an action until he satisfied court orders. *See Garth O. Green Enterprises, Inc. v. Standard Plumbing Supply, Inc.*, No. 2:15-CV-00556-DN-EJF, 2017 WL 1843097, at *5 (D. Utah May 5, 2017).

The Tenth Circuit too has noted that Mr. Mumford's conduct "evinces a pattern and practice of disregard for this Court's rules, orders and deadlines." Conti Decl., Ex. 3. The Tenth Circuit admonished Mr. Mumford for his practice being "inconsistent with the standards of practice required of attorneys admitted to appear before this Court." *Id.*, Ex. 4.[11]

Mr. Mumford has repeatedly violated court orders and rulings in this disciplinary show cause matter, which itself was prompted in part due to his failure to comply with Court rulings. (*See* Dkt. Nos. 3, 5, 6, 9, 13, 17 and 23.) He has also, as discussed above, routinely violated the Court's order against citing or quoting rough trial transcripts.

Mr. Mumford has been less than candid with the Court since it entered the Show Cause Order. On November 3, 2017, the Court entered an Order to Marcus R. Mumford to Show Cause why his failure to file a response to the original Show Cause Order should not be treated as an admission. (Dkt. No. 6.) Mr. Mumford responded, in part, by stating that he missed the October 31, 2017 deadline to file a response because on that day he learned that the United States had "decided to retry my client in, *United States of America v. Claud R. Koerber*," and he learned that same day that the judge in *Koerber* recused himself. (Dkt. No. 7 at 2, 3.) It appears that Mr. Mumford did not learn of these supposedly excusing facts until after the deadline had already passed. (*See* Declaration of Robert C. Weaver in Support of Motion for Clarification of Court's Minute Order Dated November 13, 2017, Dkt. No. 11.)

---

[11] Per Mr. Mumford's Witness List and Partial Proffer of Testimony, it appears that in August 2017 the Department of Justice filed state bar complaints against him. (Dkt. No. 24 at 9.)

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

In sum, Mr. Mumford's extensive history both before this Court and others demonstrates any future appearance by Mr. Mumford will likely result in his violation of the norms and rules of professional conduct. To protect the public, the Court, and to preserve the decorum and respectability of the profession, the Court should revoke Mr. Mumford's *pro hac vice* status and preclude him from ever gaining such admission in this Court again.

## IV.  MATTERS NOT AT ISSUE IN THE DISTRICT COURT'S ORDER TO SHOW CAUSE

As noted above, Mr. Mumford's altercation with the U.S. Marshals is not a basis for the District Court's Order to Show Cause. Nothing offered in this Opposition to Mr. Mumford's Provisional Response raises this incident as a basis for the sanction sought by the District Court. This point is raised here because it appears from Mr. Mumford's Provisional Response, exhibits, and recent witness designations that much of his response is devoted to the non-issue. Mr. Mumford thus can be assured that evidence on this issue neither will be needed nor will be relevant to this Order to Show Cause hearing.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING PERMANENT *PRO HAC VICE* REVOCATION**

## V.    CONCLUSION

Permitting conduct such as evidenced by Mr. Mumford would indeed lower the bar of professional conduct which has been a source of pride in this district for generations. He should be barred from further appearance as an attorney here.

DATED this 13th day of December, 2017.

Respectfully submitted,


By  *s/ Eric A. Lindenauer*
Robert C. Weaver, Jr., OSB #801350
Email: rweaver@gsblaw.com
Eric A. Lindenauer, OSB #833721
Email: elindenauer@gsblaw.com
Joseph Arellano, OSB #801518
Email: jarellano@gsblaw.com
Patrick J. Conti, OSB #141308
Email: pconti@gsblaw.com
GARVEY SCHUBERT BARER
121 SW Morrison Street, 11th Floor
Portland, OR 97204
Telephone:  (503) 228-3939

*Attorneys for United States District
Court, District of Oregon*

GSB:9160743.1

**OPPOSITION TO MARCUS MUMFORD'S PROVISIONAL RESPONSE TO THE
COURT'S ORDER TO SHOW CAUSE AND MEMORANDUM SUPPORTING
PERMANENT *PRO HAC VICE* REVOCATION**

26